UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. __15-60317__ CR-BLOOM

                   VALLE

18 U.S.C. § 1349
18 U.S.C. § 1343
18 U.S.C. § 1341
18 U.S.C. § 1512(b)(1)
18 U.S.C. § 1505
18 U.S.C. § 2
18 U.S.C. § 981(a)(1)(C)
18 U.S.C. § 982(a)(8)

UNITED STATES OF AMERICA

vs.

THOMAS A. GUERRIERO,
DIANA P. LOVERA,
VICTOR LOVERA,
EDWARD R. SACHS,
ANDREW J. BOURDEAUX,
JOSEPH LOISH,
STEVEN L. GOLDSTEIN,
STEVEN SHARAF,
and
FRANK PENALOZA,

        Defendants.

_____/

## INDICTMENT

The Grand Jury charges that:

## GENERAL ALLEGATIONS

At all times relevant to this Indictment:

1.      Oxford City Football Club, Inc. ("Oxford City") was a Florida corporation that claimed to manage a diverse portfolio of businesses having financial interests in sports, education, media, and real estate.  Oxford City's principal place of business was located in Deerfield Beach, Florida.

2.     Defendant **THOMAS A. GUERRIERO** resided in Deerfield Beach, Florida, and was the owner and principal of Oxford City.

3.     Defendant **DIANA P. LOVERA** resided in Deerfield Beach, Florida, and was the Chief Operating Officer of Oxford City.

4.     Defendant **VICTOR LOVERA** resided in Deerfield Beach, Florida, and was Director of Media Relations for Oxford City.

5.     Defendant **EDWARD R. SACHS** resided in Boca Raton, Florida, and was a sales agent for Oxford City.

6.     Defendant **ANDREW J. BOURDEAUX** resided in Davie, Florida, and was a sales agent for Oxford City.

7.     Defendant **JOSEPH LOISH** resided in Pompano Beach, Florida, and was a sales agent for Oxford City.

8.     Defendant **STEVEN L. GOLDSTEIN** resided in Sunrise, Florida, and was a sales agent for Oxford City.

9.     Defendant **STEVEN SHARAF** resided in Pembroke Pines, Florida, and was a sales agent for Oxford City.

10.    Defendant **FRANK PENALOZA** resided in Pompano Beach, Florida, and was a sales agent for Oxford City.

## COUNT 1
## CONSPIRACY TO COMMIT WIRE AND MAIL FRAUD
### (18 U.S.C. § 1349)

1.     Paragraphs 1 through 10 of the General Allegations section of this Indictment are realleged and incorporated by reference as if fully set forth herein.

2.     From in or around July 2013, through in or around July 2015, in Broward County, in the Southern District of Florida, and elsewhere, the defendants,

2

**THOMAS A. GUERRIERO,**
**DIANA P. LOVERA,**
**VICTOR LOVERA,**
**EDWARD R. SACHS,**
**ANDREW J. BOURDEAUX,**
**JOSEPH LOISH,**
**STEVEN L. GOLDSTEIN,**
**STEVEN SHARAF, and**
**FRANK PENALOZA,**

and their co-conspirators did willfully, that is, with the intent to further the objects of the conspiracy, and knowingly combine, conspire, confederate and agree with each other and with others known and unknown to the Grand Jury, to:

(a)      knowingly, and with the intent to defraud, devise and intend to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations and promises were false and fraudulent when made, and knowingly cause to be delivered certain mail matter by the United States Postal Service and by private or commercial interstate carrier, according to the directions thereon, in violation of Title 18, United States Code, Section 1341; and

(b)      knowingly, and with the intent to defraud, devise and intend to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations and promises were false and fraudulent when made, and knowingly transmitting and causing to be transmitted in interstate commerce, by means of wire communication, certain writings, signs, signals, pictures and sounds, for the purpose of executing the scheme, in violation of Title 18, United States Code, Section 1343.

## PURPOSE OF THE CONSPIRACY

3.      It was the purpose of the scheme and artifice for the defendants and their co-conspirators to unlawfully enrich themselves by misappropriating investor money for their personal

use and benefit by making material representations that were false, and concealing and failing to state material facts concerning, among other things, the safety, profitability, and transferability of Oxford City stock, and the defendants and their co-conspirators' commissions and fees.

## MANNER AND MEANS OF THE CONSPIRACY

The manner and means by which the defendants and their co-conspirators sought to accomplish the objects and purpose of the conspiracy included, among others, the following:

4.      On or about July 26, 2013, **THOMAS A. GUERRIERO** requested that the Florida Department of State, Division of Corporations, change the name of an existing corporation he owned to Oxford City.

5.      On or about August 14, 2013, and September 16, 2013, **THOMAS A. GUERRIERO** opened bank accounts in the name of Oxford City at a financial institution located in Deerfield Beach, Florida.  At all times, **GUERRIERO,** and for certain times, **VICTOR LOVERA,** had signing authority on the bank accounts.

6.      Oxford City's common stock traded on the Over-The-Counter Bulletin Board ("OTCBB").

7.      Oxford City traded as an illiquid, thinly-traded stock, which means the stock traded in low volumes, by a limited number of interested buyers and sellers, and often lead to volatile changes in price when a stock trade occurred.

8.      **THOMAS A. GUERRIERO, DIANA P. LOVERA, VICTOR LOVERA, EDWARD R. SACHS, ANDREW J. BOURDEAUX, JOSEPH LOISH, STEVEN L. GOLDSTEIN, STEVEN SHARAF** and **FRANK PENALOZA** and their co-conspirators solicited investors located throughout the United States to buy shares of Oxford City stock directly from the company in private placement offerings.

9.     Certain sales agents, referred to internally at Oxford City as "fronters," used lead lists consisting of contact information for potential investors.  Through telemarketing, fronters made initial contact with potential investors, then referred those potential investors interested in investing in Oxford City to other sales agents referred to as "closers" and "loaders," who completed the stock purchase transactions.

10.    **THOMAS A. GUERRIERO** created and approved all sales "scripts" used to solicit potential investors and trained all of the sales agents in how to pitch Oxford City stock to potential investors.

11.    The defendants and their co-conspirators told investors that, for a limited time only, restricted shares of Oxford City stock were available at a steep discount to the price of the shares trading on the OTCBB.

12.    The defendants and their co-conspirators told investors that they could not transfer or sell the restricted shares of Oxford City stock for six to twelve months after purchase.

13.    The defendants and their co-conspirators directed investors to make payments for Oxford City stock transactions by: (a) transferring funds electronically via interstate wires to bank accounts **THOMAS A. GUERRIERO** controlled; or (b) mailing checks to Oxford City's offices located in Deerfield Beach, Florida.

14.    **THOMAS A. GUERRIERO** used the money received from investors for, among other things, sales commissions, fees, and other monetary distributions to himself and to sales agents and others he hired, including **DIANA P. LOVERA, VICTOR LOVERA, EDWARD R. SACHS, ANDREW J. BOURDEAUX, JOSEPH LOISH, STEVEN L. GOLDSTEIN, STEVEN SHARAF,** and **FRANK PENALOZA.**

15.    In some instances, **THOMAS A. GUERRIERO, DIANA P. LOVERA, VICTOR LOVERA, EDWARD R. SACHS, ANDREW J. BOURDEAUX, JOSEPH LOISH, STEVEN**

L. GOLDSTEIN, STEVEN SHARAF and FRANK PENALOZA would claim to "lock-in" the sale of the "discounted" sales price for an investor using a purported "voice verification system" that the defendants and their co-conspirators claimed was linked to the investor's name, social security number, and date of birth.

16.     If an investor had second thoughts about investing in Oxford City stock, some of the defendants and their co-conspirators warned them that the voice recording was a legally binding contract that "goes through three levels of compliance" with a "federal filing with the government."

17.     Oxford City had no voice verification system.   The defendants and their co-conspirators duped investors into believing that there was a voice verification system by merely hitting a button on a telephone key pad.

18.     The defendants and their co-conspirators also used high-pressure, strong-armed tactics to intimidate and coerce individuals to invest in Oxford City.  For example, if an investor did not forward funds to Oxford City in a timely fashion, the defendants threatened to: (a) commence legal action against the investor; (b) place a lien on the investor's bank accounts; (c) ruin the investor's credit rating by reporting to credit agencies; and (d) garnish the investor's wages.

19.     The defendants and their co-conspirators told investors to invest in Oxford City because it was a good investment, a "no brainer," and that the Oxford City investment "can't lose money."   Further, the defendants and their co-conspirators falsely told investors that no commissions were charged because the sales agents were paid a salary.

20.     The defendants and their co-conspirators provided investors with promotional material that contained business plans, press releases, and other information that contained false and fraudulent information about Oxford City.

21.     To induce investors to provide the defendants and their co-conspirators money, THOMAS A. GUERRIERO, DIANA P. LOVERA, VICTOR LOVERA, EDWARD R.

SACHS, ANDREW J. BOURDEAUX, JOSEPH LOISH, STEVEN L. GOLDSTEIN, STEVEN SHARAF, FRANK PENALOZA and their co-conspirators, made and caused others to make numerous materially false and fraudulent statements to investors, including, among other things, the following:

**Materially False Statements**

(a) That the company was a 131 year-old debt-free holding company;

(b) That Oxford City had a "book value of $38 per share" and "should be trading at 5-6 times book value;"

(c) That the value of Oxford City stock would "dramatically" increase within the first year -- in some instances investors were told Oxford City stock would increase up to $40 per share;

(d) That Oxford City would pay a 50% dividend within the first year;

(e) That insiders and large institutional firms held 88% of the company making an investment in Oxford City stock "extremely stable and secure;"

(f) That Oxford City stock would be listed on the New York Stock Exchange in 2015;

(g) That Oxford City owned or operated a broadcast network that included a radio station;

(h) That Oxford City owned $90 million worth of real estate;

(i) That Oxford City owned 100% of the Oxford City Football Club team;

(j) That Oxford City owned an online university that had 10,000 students enrolled and would soon generate over $90-$100 million revenue to the company;

(k) That Oxford City possessed a "voice verification system";

(l) That sales agents made no commissions; and

(m)     That **GUERRIRRO** had a personal net worth in excess of $100 million.

22.     Over the course of the scheme, **THOMAS A. GUERRIERO, DIANA P. LOVERA, VICTOR LOVERA, EDWARD R. SACHS, ANDREW J. BOURDEAUX, JOSEPH LOISH, STEVEN L. GOLDSTEIN, STEVEN SHARAF, FRANK PENALOZA** and their co-conspirators, falsely and fraudulently caused over 150 individuals to buy shares of Oxford City restricted stock for approximately $6.6 million.

All in violation of Title 18, United States Code, Section 1349.

### COUNTS 2-4
### WIRE FRAUD
### (18 U.S.C. § 1343)

1.     Paragraphs 1 through 5 and 8 of the General Allegations section of this Indictment are realleged and incorporated by reference as if fully set forth herein.

2.     From in or around July 2013, through in or around July 2015, in Broward County, in the Southern District of Florida, and elsewhere, the defendants,

**THOMAS A. GUERRIERO,**
**DIANA P. LOVERA,**
**VICTOR LOVERA,**
**EDWARD R. SACHS, and**
**STEVEN L. GOLDSTEIN,**

did knowingly, and with the intent to defraud, devise and intend to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations and promises were false and fraudulent when made, and for the purpose of executing the scheme and artifice, did knowingly transmit and cause to be transmitted in interstate commerce, by means of wire communication, certain writings, signs, signals, pictures and sounds.

8

**PURPOSE OF THE SCHEME AND ARTIFICE**

3.     It was the purpose of the scheme and artifice for the defendants and their accomplices to unlawfully enrich themselves by misappropriating investor money for their personal use and benefit by making material representations that were false, and concealing and failing to state material facts concerning, among other things, the safety, profitability, and transferability of Oxford City stock, and the defendants and their accomplices' commissions and fees.

**THE SCHEME AND ARTIFICE**

4.     On or about July 26, 2013, **THOMAS A. GUERRIERO** requested that the Florida Department of State, Division of Corporations, change the name of an existing corporation he owned to Oxford City.

5.     On or about August 14, 2013, and September 16, 2013, **THOMAS A. GUERRIERO** opened bank accounts in the name of Oxford City at a financial institution located in Deerfield Beach, Florida.  At all times, **GUERRIERO,** and for certain times, **VICTOR LOVERA,** had signing authority on the bank accounts.

6.     Oxford City's common stock traded on the Over-The-Counter Bulletin Board ("OTCBB").

7.     Oxford City traded as an illiquid, thinly-traded stock, which means the stock traded in low volumes, by a limited number of interested buyers and sellers, and often lead to volatile changes in price when a stock trade occurred.

8.     **THOMAS A. GUERRIERO, DIANA P. LOVERA, VICTOR LOVERA, EDWARD R. SACHS, STEVEN L. GOLDSTEIN,** and their accomplices solicited investors located throughout the United States to buy shares of Oxford City stock directly from the company in private placement offerings.

9.      Certain sales agents, referred to internally at Oxford City as "fronters," used lead lists consisting of contact information for potential investors.  Through telemarketing, fronters made initial contact with potential investors, then referred those potential investors interested in investing in Oxford City to other sales agents referred to as "closers" and "loaders," who completed the stock purchase transactions.

10.     **THOMAS A. GUERRIERO** created and approved all sales "scripts" used to solicit potential investors and trained all of the sales agents in how to pitch Oxford City stock to potential investors.

11.     The defendants and their accomplices told investors that, for a limited time only, restricted shares of Oxford City stock were available at a steep discount to the price of the shares trading on the OTCBB.

12.     The defendants and their accomplices told investors that they could not transfer or sell the restricted shares of Oxford City stock for six to twelve months after purchase.

13.     The defendants and their accomplices directed investors to make payments for Oxford City stock transactions by: (a) transferring funds electronically via interstate wires to bank accounts **THOMAS A. GUERRIERO** controlled; or (b) mailing checks to Oxford City's offices located in Deerfield Beach, Florida.

14.     **THOMAS A. GUERRIERO** used the money received from investors for, among other things, sales commissions, fees, and other monetary distributions to himself and to sales agents and others he hired, including **DIANA P. LOVERA, VICTOR LOVERA, EDWARD R. SACHS,** and **STEVEN L. GOLDSTEIN.**

15.     In some instances, **THOMAS A. GUERRIERO, DIANA P. LOVERA, VICTOR LOVERA, EDWARD R. SACHS, STEVEN L. GOLDSTEIN** and their accomplices would claim to "lock-in" the sale of the "discounted" sales price for an investor using a purported "voice

verification system" that the defendants and their accomplices claimed was linked to the investor's name, social security number, and date of birth.

16.     If an investor had second thoughts about investing in Oxford City stock, some of the defendants and their accomplices warned them that the voice recording was a legally binding contract that "goes through three levels of compliance" with a "federal filing with the government."

17.     Oxford City had no voice verification system.  The defendants and accomplices duped investors into believing that there was a voice verification system by merely hitting a button on a telephone key pad.

18.     The defendants and their accomplices also used high-pressure, strong-armed tactics to intimidate and coerce individuals to invest in Oxford City.  For example, if an investor did not forward funds to Oxford City in a timely fashion, the defendants threatened to: (a) commence legal action against the investor; (b) place a lien on the investor's bank accounts; (c) ruin the investor's credit rating by reporting to credit agencies; and (d) garnish the investor's wages.

19.     The defendants and their accomplices told investors to invest in Oxford City because it was a good investment, a "no brainer," and that the Oxford City investment "can't lose money." Further, the defendants and their accomplices falsely told investors that no commissions were charged because the sales agents were paid a salary.

20.     The defendants and their accomplices provided investors with promotional material that contained business plans, press releases, and other information that contained false and fraudulent information about Oxford City.

21.     To induce investors to provide the defendants and their accomplices money, **THOMAS A. GUERRIERO, DIANA P. LOVERA, VICTOR LOVERA, EDWARD R. SACHS, STEVEN L. GOLDSTEIN,** and their accomplices, made and caused others to make numerous materially false and fraudulent statements to investors, including, among other things, the

following:

## **Materially False Statements**

(j)     That the company was a 131 year-old debt-free holding company;

(k)     That Oxford City had a "book value of $38 per share" and "should be trading at 5-6 times book value;"

(l)     That the value of Oxford City stock would "dramatically" increase within the first year -- in some instances investors were told Oxford City stock would increase up to $40 per share;

(m)     That Oxford City would pay a 50% dividend within the first year;

(n)     That insiders and large institutional firms held 88% of the company making an investment in Oxford City stock "extremely stable and secure;"

(o)     That Oxford City stock would be listed on the New York Stock Exchange in 2015;

(p)     That Oxford City owned or operated a broadcast network that included a radio station;

(q)     That Oxford City owned $90 million worth of real estate;

(r)     That Oxford City owned 100% of the Oxford City Football Club team;

(j)     That Oxford City owned an online university that had 10,000 students enrolled and would soon generate over $90-$100 million revenue to the company;

(k)     That Oxford City possessed a "voice verification system";

(l)     That sales agents made no commissions; and

(m)     That **GUERRIRRO** had a personal net worth in excess of $100 million.

22.     Over the course of the scheme, **THOMAS A. GUERRIERO, DIANA P.**

**LOVERA, VICTOR LOVERA, EDWARD R. SACHS,** and their accomplices, falsely and fraudulently caused over 150 individuals to buy shares of Oxford City restricted stock for approximately $6.6 million.

**USE OF THE WIRES**

23.    On or about the dates enumerated below, the defendants, for the purpose of executing and in furtherance of the scheme and artifice to defraud and to obtain money and property by means of materially and false and fraudulent pretenses, representations, and promises, did knowingly transmit and cause to be transmitted, in interstate commerce, by means of wire communication, certain writings, signs, signals, pictures and sounds, as more particularly described below:

| COUNT | APPROXIMATE DATE OF USE OF WIRES | DESCRIPTION OF TRANSMISSION |
|:---:|:---:|:---|
| 2 | October 9, 2013 | **THOMAS A. GUERRIERO** and **DIANA P. LOVERA** caused investor T.C. to make an interstate wire transfer in the amount of approximately $50,000.00 from a financial institution in New York, New York, to a bank account located in the Southern District of Florida |
| 3 | January 27, 2014 | **THOMAS A. GUERRIERO, DIANA P. LOVERA,** and **VICTOR LOVERA** caused investor D.N. to make an interstate wire transfer in the amount of approximately $5,000.00 from a financial institution in Cincinnati, Ohio to a bank account located in the Southern District of Florida |
| 4 | June 10, 2014 | **THOMAS A. GUERRIERO, DIANA P. LOVERA, VICTOR LOVERA, EDWARD SACHS,** and **STEVEN L. GOLDSTEIN** caused investor J.A. to make an interstate wire transfer in the amount of approximately $95,000.00 from a financial institution in San Antonio, Texas, to a bank account located in the Southern District of Florida |

In violation of Title 18, United States Code, Sections 1343 and 2.

## COUNTS 5-7
## MAIL FRAUD
## (18 U.S.C. § 1341)

1.      Paragraphs 1 through 3 and 6 through 7 of the General Allegations section of this Indictment are realleged and incorporated by reference as if fully set forth herein.

2.      From in or around July 2013, through in or around July 2015, in Broward County, in the Southern District of Florida, and elsewhere, the defendants,

**THOMAS A. GUERRIERO,**
**DIANA P. LOVERA,**
**ANDREW J. BOURDEAUX, and**
**JOSEPH LOISH,**

did knowingly, and with the intent to defraud, devise and intend to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations and promises were false and fraudulent when made, and did knowingly cause to be delivered certain mail matter by the United States Postal Service and by private and commercial interstate carrier, according to the directions thereon, in violation of Title 18, United States Code, Section 1341.

### PURPOSE OF THE SCHEME AND ARTIFICE

3.      It was the purpose of the scheme and artifice for the defendants and their accomplices to unlawfully enrich themselves by misappropriating investor money for their personal use and benefit by making material representations that were false, and concealing and failing to state material facts concerning, among other things, the safety, profitability, and transferability of Oxford City stock, and the defendants and their accomplices' commissions and fees.

### THE SCHEME AND ARTIFICE

4.      On or about July 26, 2013, **THOMAS A. GUERRIERO** requested that the Florida Department of State, Division of Corporations, change the name of an existing corporation he

owned to Oxford City.

5.      On or about August 14, 2013, and September 16, 2013, **THOMAS A. GUERRIERO** opened bank accounts in the name of Oxford City at a financial institution located in Deerfield Beach, Florida.  At all times, **GUERRIERO,** and for certain times, **VICTOR LOVERA,** had signing authority on the bank accounts.

6.      Oxford City's common stock traded on the Over-The-Counter Bulletin Board ("OTCBB").

7.      Oxford City traded as an illiquid, thinly-traded stock, which means the stock traded in low volumes, by a limited number of interested buyers and sellers, and often lead to volatile changes in price when a stock trade occurred.

8.      **THOMAS A. GUERRIERO, DIANA P. LOVERA, ANDREW J. BOURDEAUX, JOSEPH LOISH**, and their accomplices solicited investors located throughout the United States to buy shares of Oxford City stock directly from the company in private placement offerings.

9.      Certain sales agents, referred to internally at Oxford City as "fronters," used lead lists consisting of contact information for potential investors.  Through telemarketing, fronters made initial contact with potential investors, then referred those potential investors interested in investing in Oxford City to other sales agents referred to as "closers" and "loaders," who completed the stock purchase transactions.

10.     **THOMAS A. GUERRIERO** created and approved all sales "scripts" used to solicit potential investors and trained all of the sales agents in how to pitch Oxford City stock to potential investors.

11.     The defendants and their accomplices told investors that, for a limited time only, restricted shares of Oxford City stock were available at a steep discount to the price of the shares trading on the OTCBB.

12.     The defendants and their accomplices told investors that they could not transfer or sell the restricted shares of Oxford City stock for six to twelve months after purchase.

13.     The defendants and their accomplices directed investors to make payments for Oxford City stock transactions by: (a) transferring funds electronically via interstate wires to bank accounts **THOMAS A. GUERRIERO** controlled; or (b) mailing checks to Oxford City's offices located in Deerfield Beach, Florida.

14.     **THOMAS A. GUERRIERO** used the money received from investors for, among other things, sales commissions, fees, and other monetary distributions to himself and to sales agents and others he hired, including **DIANA P. LOVERA**, **ANDREW J. BOURDEAUX**, and **JOSEPH LOISH.**

15.     In some instances, **THOMAS A. GUERRIERO**, **DIANA P. LOVERA**, **ANDREW J. BOURDEAUX, JOSEPH LOISH,** and their accomplices would claim to "lock-in" the sale of the "discounted" sales price for an investor using a purported "voice verification system" that the defendants and their accomplices claimed was linked to the investor's name, social security number, and date of birth.

16.     If an investor had second thoughts about investing in Oxford City stock, some of the defendants and their accomplices warned them that the voice recording was a legally binding contract that "goes through three levels of compliance" with a "federal filing with the government."

17.     Oxford City had no voice verification system.  The defendants and accomplices duped investors into believing that there was a voice verification system by merely hitting a button on a telephone key pad.

18.     The defendants and their accomplices also used high-pressure, strong-armed tactics to intimidate and coerce individuals to invest in Oxford City.  For example, if an investor did not forward funds to Oxford City in a timely fashion, the defendants threatened to: (a) commence legal

action against the investor; (b) place a lien on the investor's bank accounts; (c) ruin the investor's credit rating by reporting to credit agencies; and (d) garnish the investor's wages.

19.     The defendants and their accomplices told investors to invest in Oxford City because it was a good investment, a "no brainer," and that the Oxford City investment "can't lose money." Further, the defendants and their accomplices falsely told investors that no commissions were charged because the sales agents were paid a salary.

20.     The defendants and their accomplices provided investors with promotional material that contained business plans, press releases, and other information that contained false and fraudulent information about Oxford City.

21.     To induce investors to provide the defendants and their accomplices money, **THOMAS A. GUERRIERO, DIANA P. LOVERA, ANDREW J. BOURDEAUX, JOSEPH LOISH,** and their accomplices, made and caused others to make numerous materially false and fraudulent statements to investors, including, among other things, the following:

### **Materially False Statements**

(s)     That the company was a 131 year-old debt-free holding company;

(t)     That Oxford City had a "book value of $38 per share" and "should be trading at 5-6 times book value;"

(u)     That the value of Oxford City stock would "dramatically" increase within the first year -- in some instances investors were told Oxford City stock would increase up to $40 per share;

(v)     That Oxford City would pay a 50% dividend within the first year;

(w)     That insiders and large institutional firms held 88% of the company making an investment in Oxford City stock "extremely stable and secure;"

(x)     That Oxford City stock would be listed on the New York Stock Exchange in

2015;

(y)     That Oxford City owned or operated a broadcast network that included a

radio station;

(z)     That Oxford City owned $90 million worth of real estate;

(aa)    That Oxford City owned 100% of the Oxford City Football Club team;

(j)     That Oxford City owned an online university that had 10,000 students

enrolled and would soon generate over $90-$100 million revenue to the

company;

(k)     That Oxford City possessed a "voice verification system";

(l)     That sales agents made no commissions; and

(m)     That **GUERRIRRO** had a personal net worth in excess of $100 million.

22.     Over the course of the scheme, **THOMAS A. GUERRIERO, DIANA P.
LOVERA, VICTOR LOVERA, EDWARD R. SACHS,** and their accomplices, falsely and
fraudulently caused over 150 individuals to buy shares of Oxford City restricted stock for
approximately $6.6 million.

## USE OF THE MAILS

23.     On or about the dates enumerated below, the defendants, for the purpose of
executing and in furtherance of the scheme and artifice to defraud and to obtain money and property
by means of materially and false and fraudulent pretenses, representations, and promises, knowing
the pretenses, representations, and promises were false and fraudulent when made, did knowingly
cause to be delivered certain mail matter by United States Postal Service and by a private or
commercial interstate carrier, according to the directions thereon, as more particularly described
below:

| COUNT | APPROXIMATE DATE OF MAILING | DESCRIPTION OF MAILING |
|---|---|---|
| 5 | January 6, 2014 | **THOMAS A. GUERRIERO** and **JOSEPH LOISH** caused investor J.B to mail, via FedEx, check number 1176 in the amount of approximately $5,000.00 from Spring Branch, Texas, to Oxford City's offices located in Deerfield Beach, Florida, in the Southern District of Florida |
| 6 | March 18, 2014 | **THOMAS A. GUERRIERO** and **DIANA P. LOVERA** caused investor W.C. to mail, via FedEx, check number 2217 in the amount of approximately $250,000.00 from Reno, Nevada, to Oxford City's offices located in Deerfield Beach, Florida, in the Southern District of Florida |
| 7 | July 3, 2015 | **THOMAS A. GUERRIERO** and **ANDREW BORDEAUX** caused investor H.H. to mail, via FedEx, check number 281 in the amount of approximately $5,000.00 from Ann Arbor, Michigan, to Oxford City's offices located in Deerfield Beach, Florida in the Southern District of Florida |

In violation of Title 18, United States Code, Sections 1341and 2.

**COUNT 8**
**WITNESS TAMPERING**
**(18 U.S.C. § 1512(b)(1))**

On or about February 11, 2015, in Broward County, in the Southern District of Florida, and elsewhere, the defendant,

**THOMAS A. GUERRIERO,**

did knowingly and willfully intimidate, threaten, and corruptly persuade and attempt to intimidate, threaten, and corruptly persuade another person, that is, confidential witness one ("CW-1"), with the intent to influence, delay, prevent, and withhold the testimony of CW-1 in an official proceeding, that is, a pending investigation of Oxford City by the U.S. Securities and Exchange Commission.

In violation of Title 18, United States Code, Section 1512(b)(1).

### COUNT 9
### WITNESS TAMPERING
### (18 U.S.C. § 1512(b)(1))

On or about February 11, 2015, in Broward County, in the Southern District of Florida, and elsewhere, the defendant,

### THOMAS A. GUERRIERO,

did knowingly and willfully intimidate, threaten, and corruptly persuade and attempt to intimidate, threaten, and corruptly persuade another person, that is, confidential witness two ("CW-2"), with the intent to influence, delay, prevent, and withhold the testimony of CW-2 in an official proceeding, that is, a pending investigation of Oxford City by the U.S. Securities and Exchange Commission.

In violation of Title 18, United States Code, Section 1512(b)(1).

### COUNT 10
### OBSTRUCTION OF JUSTICE
### (18 U.S.C. § 1505)

On or about January 25, 2015, in Broward County, in the Southern District of Florida, and elsewhere, the defendant,

### THOMAS A. GUERRIERO,

did knowingly and corruptly endeavor to influence, obstruct and impede the due and proper administration of the law under a pending proceeding being had before the U.S. Securities and Exchange Commission ("SEC"), an agency of the United States, in that the defendant caused D.N. to create false and fraudulent voice recorded messages scripted by the defendant and provided to the SEC in its investigation of Oxford City.

In violation of Title 18, United States Code, Sections 1505 and 2.

## FORFEITURE
### (18 U.S.C. §§ 981(a)(1)(C) and 982(a)(8))

1.      The allegations of this Indictment are realleged, and by this reference fully incorporated herein, for the purpose of alleging forfeiture to the United States of America of certain property in which the defendants, **THOMAS A. GUERRIERO, DIANA P. LOVERA, VICTOR LOVERA, EDWARD R. SACHS, ANDREW J. BOURDEAUX, JOSEPH LOISH, STEVEN L. GOLDSTEIN**, **STEVEN SHARAF** and **FRANK PENALOZA,** have an interest.

2.      Upon conviction of any  violation of Title 18, United States Code, Sections 1341, 1343 or 1349, as alleged in this Indictment, the defendants, **THOMAS A. GUERRIERO, DIANA P. LOVERA, VICTOR LOVERA, EDWARD R. SACHS, ANDREW J. BOURDEAUX, JOSEPH LOISH, STEVEN L. GOLDSTEIN**, **STEVEN SHARAF** and **FRANK PENALOZA** shall forfeit to the United Statesany property, real or personal, (a) used or intended to be used to commit, to facilitate, or to promote the commission of such offense; and (b) constituting, derived from, or traceable to the gross proceeds the defendants obtained directly or indirectly as a result of such violation, pursuant to Title 18, United States Code, Section 982(a)(8).

3.      Upon conviction of any violation of Title 18, United States Code, Section 1512(b)(2), as alleged in this Indictment, the defendant, **THOMAS A. GUERRIERO**, shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to such violation, pursuant to Title 18, United States Code, Section 981(a)(1)(C), as made applicable by Title 28, United States Code, Section 2461(c).

4.      The property subject to forfeiture includes, but is not limited to, the following:

A.      the sum of $6,600,000.00, which amount is equal to the gross proceeds obtained as a result of the violations alleged in this Indictment, which the United States will seek as a forfeiture money judgment as part of each defendant's sentence.

        B.     Real Properties

            i.     1952 N.E. 4th Street, Deerfield Beach, Fl.;

            ii.    1199 Hillsboro Mile 119, Hillsboro Beach, Fl.;

            iii.   1241 S.E. 3rd Court A, Deerfield Beach, Fl.; and

            iv.   1366 S.W. 4th Court, Boca Raton, Fl.

        C.     Bank Accounts

            i.     Bank of America, Account No. 8980-6103-3406, in the name of Oxford City, in the amount of $244,000.000

            ii.    Bank of America, Account No. 8980-6008-3651, in the name of Oxford City, in the amount of $ 6,434,817.03

            iii.   Bank of America, Account No. 8980-5418-0405, in the name of GCE Wealth, Inc., in the amount of $1,319,000.00

            iv.   Bank of America, Account No. 8980-5172-5258, in the name of GCE Wealth, Inc., in the amount of $547,500.00

    5.    If the property above described as being subject to forfeiture, as a result of any act or omission of the defendants,

        (a)    cannot be located upon the exercise of due diligence;

        (b)    has been transferred or sold to, or deposited with a third person;

        (c)    has been placed beyond the jurisdiction of the Court;

        (d)    has been substantially diminished in value; or

        (e)    has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States to seek forfeiture of any other property of the defendants up to the value of the proceeds traceable to the violations alleged in this Indictment, pursuant to Title 21,

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

UNITED STATES OF AMERICA                          CASE NO. _____

vs.

                                                  **CERTIFICATE OF TRIAL ATTORNEY***
THOMAS A. GUERRIERO, Et Al.,

_____ /

                                Defendants.        **Superseding Case Information:**

**Court Division:** (Select One)                   New Defendant(s)          Yes _____    No _____
                                                  Number of New Defendants  _____
_____ Miami    _____ Key West                   Total number of counts    _____
__X___ FTL      _____ WPB        _____ FTP

I do hereby certify that:

1.   I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2.   I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3.   Interpreter:      (Yes or No)        __NO__
     List language and/or dialect   _____

4.   This case will take __10__ days for the parties to try.

5.   Please check appropriate category and type of offense listed below:

| (Check only one) | | | (Check only one) | |
|---|---|---|---|---|
| I    | 0 to 5 days | _____ | Petty   | _____ |
| II   | 6 to 10 days | ___X___ | Minor   | _____ |
| III  | 11 to 20 days | _____ | Misdem. | _____ |
| IV   | 21 to 60 days | _____ | Felony  | ___X___ |
| V:   | 61 days and over | _____ | | |

6.   Has this case been previously filed in this District Court?     (Yes or No)     __No__
If yes:
Judge: _____     Case No. _____
(Attach copy of dispositive order)
Has a complaint been filed in this matter?     (Yes or No)     __No__
If yes:
Magistrate Case No.                  _____
Related Miscellaneous numbers:       _____
Defendant(s) in federal custody as of _____
Defendant(s) in state custody as of  _____
Rule 20 from the _____     District of _____

Is this a potential death penalty case? (Yes or No)     __No__

7.   Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to October 14, 2003?        _____ Yes    ___X___ No

8.   Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to September 1, 2007?        _____ Yes    ___X___ No

_____
ROGER CRUZ
ASSISTANT UNITED STATES ATTORNEY
FLORIDA BAR NUMBER:   157971

*Penalty Sheet(s) attached                                                        REV 4/8/08

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name:** **Thomas A. Guerriero**

**Case No:** _____

Count #: 1

Conspiracy to Commit Wire and Mail Fraud

Title 18, United States Code, Section 1349

**\* Max. Penalty:**              Twenty (20) years' imprisonment


Counts #: 2-4

Wire Fraud

Title 18, United States Code, Section 1343

**\* Max. Penalty:**              Twenty (20) years' imprisonment as to each count

Count #: 5-7

Mail Fraud

Title 18, United States Code, Section 1341

**\*Max. Penalty:**              Twenty (20) years' imprisonment

Counts #: 8-9

Tampering with a Witness

Title 18, United States Code, Section 1512(b)(2)

**\* Max. Penalty:**              Twenty (20) years' imprisonment


**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

Count #: 10

Obstruction of Justice

Title 18, United States Code, Section 1505

**\*Max. Penalty:**       Five (5) years' imprisonment

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name:** Diana P. Lovera

**Case No:** _____

Count #: 1

Conspiracy to Commit Wire and Mail Fraud

Title 18, United States Code, Section 1349

**\* Max. Penalty:**          Twenty (20) years' imprisonment

Counts #: 2-4

Wire Fraud

Title 18, United States Code, Section 1343

**\* Max. Penalty:**          Twenty (20) years' imprisonment as to each count

Count #: 6

Mail Fraud

Title 18, United States Code, Section 1341

**\*Max. Penalty:**          Twenty (20) years' imprisonment as to each count

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name**: Victor Lovera

**Case No**:

Count #: 1

Conspiracy to Commit Wire and Mail Fraud

Title 18, United States Code, Section 1349

**\* Max. Penalty**:          Twenty (20) years' imprisonment

Counts #: 3-4

Wire Fraud

Title 18, United States Code, Section 1343

**\* Max. Penalty**:          Twenty (20) years' imprisonment as to each count

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name: Edward R. Sachs**

**Case No:** _____

Count #: 1

Conspiracy to Commit Wire and Mail Fraud

Title 18, United States Code, Section 1349

**\* Max. Penalty:**          Twenty (20) years' imprisonment

Count #: 4

Wire Fraud

Title 18, United States Code, Section 1343

**\* Max. Penalty:**          Twenty (20) years' imprisonment as to each count

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name:** Andrew J. Bourdeaux

**Case No:** _____

Count #: 1

Conspiracy to Commit Wire and Mail Fraud

Title 18, United States Code, Section 1349

**\* Max. Penalty**:          Twenty (20) years' imprisonment

Count #: 7

Mail Fraud

Title 18, United States Code, Section 1341

**\*Max. Penalty:**          Twenty (20) years' imprisonment as to each count

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

<u>PENALTY SHEET</u>

**Defendant's Name**: **Joseph Loish**

**Case No**:

Count #: 1

Conspiracy to Commit Wire and Mail Fraud

Title 18, United States Code, Section 1349

**\* Max. Penalty**:            Twenty (20) years' imprisonment

Count #: 5

Mail Fraud

Title 18, United States Code, Section 1341

**\*Max. Penalty**:            Twenty (20) years' imprisonment as to each count

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## PENALTY SHEET

**Defendant's Name**: Steven L. Goldstein

**Case No**: _____

Count #: 1

Conspiracy to Commit Wire and Mail Fraud

Title 18, United States Code, Section 1349

**\* Max. Penalty**:            Twenty (20) years' imprisonment

Count #: 4

Wire Fraud

Title 18, United States Code, Section 1343

**\* Max. Penalty**:            Twenty (20) years' imprisonment as to each count

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name:** **Steven Sharaf**

**Case No**:

Count #: 1

Conspiracy to Commit Wire and Mail Fraud

Title 18, United States Code, Section 1349

**\* Max. Penalty**:                Twenty (20) years' imprisonment

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

<u>PENALTY SHEET</u>

**Defendant's Name**: **Frank Penaloza**

**Case No**:

Count #: 1

Conspiracy to Commit Wire and Mail Fraud

Title 18, United States Code, Section 1349

**\* Max. Penalty**:                Twenty (20) years' imprisonment

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**